JAMES COLUCCI, RESPONDENT, v. THE EDISON PORT-
LAND CEMENT COMPANY, PROSECUTOR.

Argued June 4, 1919—Decided October 29, 1919.

1. Where an accident is caused by the representative of the em-
   ployer, or his *alter ego*, it cannot properly be said that the risk
   of injury from such source was not fairly within the contem-
   plation of the employer.
2. Partial dependency of a father upon his son's earnings is suffi-
   cient to constitute him an actual dependent, within the mean-
   ing of the Workmen's Compensation act.

On *certiorari* to the Warren County Common Pleas.

Before Justices TRENCHARD, BERGEN and KALISCH.

For the prosecutor, *William H. Morrow.*

For the respondent, *George M. Shipman.*

The opinion of the court was delivered by

KALISCH, J.  The prosecutor brings up for review a judg-
ment of the Warren County Common Pleas Court, adjudging
compensation under the Workmen's Compensation act, based
upon a finding that the petitioner's decedent's death was the
result of an accident arising out of and in the course of his
employment.

The facts which give rise to the mooted question in this
case are briefly these:  The deceased was a minor  He en-
tered the prosecutor's employ on August 18th, 1917, and con-
tinued therein until June 18th, 1918, the date of the accident,
which caused his death.  The deceased worked in the crusher
department, an enclosed tunnel or chute, through which con-
veyors carrying stone passed.  These conveyors in their pas-
sage spill or drop stone, and it was the work of the deceased
to clean up the spills.  It appears that unless the spills are

cleaned up they tend to clog and stop the operating machinery of the plant. The character of the employment was such that the place where the deceased was obliged to do his work would become filled with stone dust, and this, in conjunction with the heat, necessitated those employed in that department at this particular work, from time to time, to seek the fresh air. The hours of employment were from seven A. M. to five P. M., and from six-ten P. M. to seven A. M. There was a day and night shift. On account of the prosecutor being short of men to do the work, it appears that the deceased immediately preceding the day of the accident had worked nearly twenty-four hours continuously. He worked the entire day on June 16th and through the night of June 17th, being off during the day of June 17th until six o'clock, at which hour he resumed his work. He was injured on the following morning. The testimony discloses that at about two-thirty on that morning he went to the drier-house on the company's premises several hundred feet from the place where he worked and sat or laid himself down upon a pile of bricks and went to sleep. Sabo, who, it appears, was in full charge of the night shift, finding the decedent absent from his work started to look for him at about four o'clock A. M., with the purpose, as he says, to get the decedent back to work to clean out the spills, and Sabo, finding decedent asleep in the drier-house, tried to awaken him, but failed. About an hour later Sabo, upon inquiry, ascertained that the decedent was still asleep in the drier-house, went there again, and, as Sabo reiterates, with the purpose of bringing the decedent back to his work, and finding him still asleep, he, Sabo, went up a tower adjoining the drier-house and threw a brick on the roof of the drier-house with the intention of causing dust and dirt to fall upon decedent, and thus awaken him so that he would come back to his work. The brick, or whatever it was, broke its way through the roof and fell upon the decedent and inflicted a mortal injury which caused his death on the following day.

It is conceded, in the brief of counsel for the prosecutor, that Sabo was the decedent's "immediate superior," and

there is evidence which would justify a finding that he was the *alter ego* of the prosecutor.

Counsel for the prosecutor contends that the facts of the present case bring it within the control of *Hulley* v. *Moosbrugger,* 88 *N. J. L.* 161, and *Mountain Ice Co.* v. *McNeil,* 91 *Id.* 528. We think not. The Court of Errors and Appeals, in an opinion by the learned Chancellor, in the last-cited case (at *p.* 528), laid down the doctrine that an accident "caused by a fellow-workman doing a wrongful act entirely outside of the scope of his employment, is not an accident so arising" (out of the employment) "unless it appears that what happened was a risk reasonably within the contemplation of the employer."

In the present case, the accident was not the result of a wrongful act of a fellow-workman, but of a representative of the prosecutor, and, therefore, it cannot be properly said that the risk of injury was not fairly within the contemplation of the employer. In this respect this case is clearly distinguishable from the cases relied on by the prosecutor.

We think the case *sub judice* bears a strong resemblance in a principal feature to *Terlecki* v. *Strauss,* 85 *N. J. L.* 454, where a factory employe quit work shortly before noon and was preparing to go home, and for which purpose she first went to a passageway, where there was a piece of looking glass fastened against a post about thirty-two feet from the machine where she worked, to comb the wool out of her hair, as was the custom of employes, to the knowledge of the superintendent and overseer, and while combing her hair she was injured, her hair being caught in moving machinery near which she was standing. This court held that she was entitled to compensation. Mr. Justice Swayze, speaking for the Supreme Court (at *p.* 455), said: "The question whether the accident arose out of the employment is perhaps more doubtful. The employment was not, indeed, the proximate cause of the accident, but it was a cause in the sense that but for the employment the accident would not have happened. The employment was one of the necessary antecedents to the accident."

This case was affirmed by the Court of Errors and Appeals, for the reasons expressed in the opinion in 86 *N. J. L.* 708.

So, in the case under discussion, it is quite evident that the employment was not the cause of the accident, yet it is equally clear that but for the employment the accident would not have happened. Besides, an important feature is present here which was absent in the Terlecki case, and that is, that the decedent's injury was the result of the superintendent's act. When Sabo used the brick, or whatever it was, to startle the decedent out of his sleep so that he might go back and continue his work, Sabo added a risk of danger to decedent's employment, for the consequences which ensued, the prosecutor must be held answerable.

It is suggested in the brief of counsel for the prosecutor that the decedent had abandoned his work by going to the drier-house to rest and sleep, and that, therefore, at the time of the accident, he was not engaged in the course of his employment. There is no merit in this.

It was not essential that the deceased should have received his injury at the place where his work was to be done. The question is whether the accident arose in the course of decedent's employment. It is clear from the superintendent's testimony that the accident occurred in the course of the employment. Sabo testified that he went to the drier-house to arouse the decedent from his sleep so that he might go back to his work. Sabo did not consider that the decedent's hours of employment were over, and the former's admitted efforts to bring the decedent to his work were clearly based upon an assumption, fully justified by the evidence, that the time of employment of the deceased had still several hours to run.

In *Bryant* v. *Fissel,* 84 *N. J. L.* 72, Mr. Justice Trenchard, speaking for this court (at *p.* 76), in discussing what is meant by the words "in the course of," adopts the definition found in *Fitzgerald* v. *Clarke & Son* (1908), 2 *K. B.* 796, where it was said "that the words 'in the course of' refer to the time, place and circumstances under which the accident takes place."

Now, here, referring to the time, place and circumstances under which the accident took place, which resulted in the death of the decedent, as related by the superintendent, there can only be one fair conclusion that the accident happened in the course of the employment of the deceased.

The only other point we need to consider is the assertion that there was no proof that the father or any other persons named in the petition was dependent upon the deceased. There is proof that the deceased gave his wages to his father who testified that he needed these contributions for the support of himself and his children. This was sufficient to support a finding that the father was an actual dependent within the meaning of the Workmen's Compensation act. *Connors* v. *Public Service Electric Co.,* 89 *N. J. L.* 99. Partial dependency of a father upon his son's earnings is sufficient to constitute him an actual dependent. *Jackson* v. *Erie Railroad Co.,* 86 *Id.* 550.

We have examined the other reasons presented by the prosecutor for a reversal of the judgment, but as they appear to involve a review of the findings of the trial judge on questions of fact, such findings being supported by testimony, we cannot properly consider them.

The judgment is affirmed, with costs.